928 F.2d 1132
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Susan Gray BEAMAN, Plaintiff,
v.
RETIREMENT SYSTEM OF THE TENNESSEE VALLEY AUTHORITY,
Defendant-Appellee,
Ina F. McKinney, Defendant and Cross-Plaintiff Appellant.
 No. 90-5377.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Tennessee, 89-00712, Jarvis, J.
 
 
 1
 E.D.Tenn.
 
 
 2
 AFFIRMED.
 
 
 3
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges; and GRAHAM, District Judge.*
 
 OPINION
 
 4
 This case involves the review of a decision of the Board of Directors of the Tennessee Valley Authority Retirement System (TVARS) concerning the distribution of funds from a retirement savings program. Defendant and cross plaintiff, Ina F. McKinney, appeals from an order of the district court granting summary judgment in favor of TVARS. The district court held that the TVARS Board's decision was supported by substantial evidence and was not arbitrary or capricious. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 5
 The Tennessee Valley Authority (TVA) created TVARS in 1939 to administer retirement benefits. Under TVA rules, an employee must belong to TVARS to receive retirement benefits. In 1966, TVARS, with TVA's consent, established the Voluntary Retirement Savings Investment Plan (Savings Plan) for TVA employees. Savings Plan participation is voluntary, and participants are given the option of withdrawing their equity before retirement or distributing it in various ways upon retirement or death.
 
 
 6
 Phil Gray, Jr. became a TVA employee and a member of TVARS in April, 1967. Mr. Gray also voluntarily participated in the Savings Plan. In 1985, Mr. Gray was diagnosed as having cancer. On November 20, 1987, Mr. Gray executed a TVA "Beneficiary Designation" form naming Ms. McKinney as his beneficiary to receive pension and Savings Plan benefits in the event he died before retirement. Ms. McKinney was a close personal friend of Mr. Gray.
 
 
 7
 Mr. Gray retired on January 30, 1988. Shortly before his retirement, he executed a TVA form designating Ms. McKinney as the beneficiary to receive his pension benefits in the event he died after retirement. With respect to the Savings Plan, Mr. Gray executed a separate form in which he directed that the savings be held "for max time." No beneficiary was designated.
 
 
 8
 On November 17, 1988, Mr. Gray made his last will and testament, leaving his estate to his two children, Susan Gray Beaman and Phillip L. Gray, III. He named Mrs. Beaman as his executrix.
 
 
 9
 Mr. Gray died on December 4, 1988. Ms. McKinney had helped care for Mr. Gray during the last several months of his life. Upon Mr. Gray's death, TVARS began paying Ms. McKinney Mr. Gray's monthly survivor pension benefits. It is not disputed that she is entitled to those benefits.
 
 
 10
 Sometime thereafter, Mrs. Beaman, as executrix of Mr. Gray's estate, and Ms. McKinney, asserted claims to the proceeds of the Savings Plan. On September 26, 1989, Mrs. Beaman filed suit in the United States District Court against TVARS, seeking a judgment that Mr. Gray's estate was entitled to the equity in the Savings Plan, or in the alternative, against the TVARS Board members, personally, for breach of fiduciary duty in failing to supply Mr. Gray the documents necessary to unequivocally designate a beneficiary to the Savings Plan. On September 28, 1989, the TVARS Board determined that the Savings Plan equity should be paid to Mr. Gray's estate under Article 5.2 of the Savings Plan.
 
 
 11
 Ms. McKinney filed a counter-complaint in the district court against Beaman and a cross-complaint against TVARS, arguing that she was entitled to the Savings Plan equity under a contract theory. Beaman thereafter took a voluntary non-suit against the original defendants, leaving Ms. McKinney's cross-complaint against TVARS as the only claim in the district court.
 
 
 12
 TVARS filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that the TVARS Board's decision was final, conclusive and not appealable, and that the district court therefore lacked jurisdiction. Both parties briefed the issues and supplemented the record with various affidavits and documents. The district court treated TVARS' motion to dismiss as a motion for summary judgment, and, after determining that it had jurisdiction, granted the motion. The district court held that the TVARS Board's decision was subject to the Administrative Procedure Act, 5 U.S.C. Sec. 551 et seq., that the Board's decision was supported by substantial evidence and the decision was not arbitrary or capricious.
 
 II.
 
 13
 The issue presented in this case is whether the district court applied the correct standard of review to the TVARS Board's decision. Ms. McKinney contends that she was entitled to a de novo review of the Board's decision. TVARS argues that because it is governmental in nature, the decisions of its Board are reviewable, if at all, only under a deferential "arbitrary and capricious" standard.
 
 
 14
 The district court held that the case was governed by the Administrative Procedure Act, 5 U.S.C. Sec. 551 et seq. (Act), and applied the standard of review set forth in 5 U.S.C. Sec. 706:
 
 
 15
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
 
 
 16
 (1) compel agency action unlawfully withheld or unreasonably delayed; and
 
 
 17
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
 
 
 18
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 19
 (B) contrary to constitutional right, power, privilege, or immunity;
 
 
 20
 (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
 
 
 21
 (D) without observance of procedure required by law;
 
 
 22
 (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
 
 
 23
 (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
 
 
 24
 In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
 
 
 25
 See Camp v. Pitts, 411 U.S. 138, 142 (1973).
 
 
 26
 Both parties cite authorities on the issue whether the Act applies in this case. It is not necessary to reach this issue, however, because, for the reasons set forth below, the Court has determined that the district court applied the correct standard of review inasmuch as the standard of review would be the same under the Act or federal common law.
 
 
 27
 This Court has previously determined that TVA is an agency and instrumentality of the United States, and that TVARS is the "equivalent of the Civil Service Retirement System" for TVA employees. Tennessee Valley Authority v. Kinzer, 142 F.2d 833, 837 (6th Cir.1944). In Kinzer, the court stated that the TVA rules and regulations "are deemed to have received legislative ratification and, thereby, to have become embedded in the law; and are to be given the same force and effect as the statute itself." Id.
 
 
 28
 TVARS argues that because it is governmental in nature, the decisions of its Board are subject to review in federal court, if at all, only under a deferential standard of review, whether under the Act or federal common law. TVARS points to a long line of cases not governed by the Act in which courts have held that the decisions of administrative agencies are to be reviewed only under a deferential standard. See e.g. National Labor Relations Board v. Hearst, 322 U.S. 111, 130-31 (1944) (NLRB findings of fact are conclusive and a court may not substitute its own inferences); Rochester Telephone Corporation v. United States, 307 U.S. 125, 146 (1939) (applying rational basis test in reviewing order of FCC); Mississippi Valley Barge Line Company v. United States, 292 U.S. 282, 286-87 (1934) (findings of Interstate Commerce Commission subject to rational basis standard of review); Brotherhood of Locomotive Firemen & Enginemen v. Chicago, Burlington & Quincy R.R., 225 F.Supp. 11 (D.D.C.), aff'd., 331 F.2d 1020 (D.C. Cir.), cert. denied, 377 U.S. 918 (1964) (decisions of statutory labor arbitration board may be overturned only if arbitrary and capricious).
 
 
 29
 Even more closely analogous are those decisions addressing the standard of review to be applied in cases involving the denial of benefits under ERISA pension plans. The United States Supreme Court recently held that "a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (emphasis added). ERISA does not set out a standard of review of beneficiary eligibility determinations. Id. at 109. To fill this void, a number of federal courts of appeals adopted the arbitrary and capricious standard developed as a principle of federal common law in connection with the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 186(c). Id. Although the U.S. Supreme Court determined that the LMRA was not the proper source for a standard of review in ERISA, id. at 110, the Court went on to state that in fashioning a federal common law standard, it would be guided by the common law of trusts, which makes "a deferential standard of review appropriate when a trustee exercises discretionary powers" conferred by the trust instrument. Id. at 111. Thus, in cases where the administrator does have discretionary authority to determine eligibility or to construe the plan's terms the deferential arbitrary and capricious standard of review governs. Rizzo v. Caterpillar, Inc., 914 F.2d 1003, 1008 (7th Cir.1990); see also Varhola v. Cyclops Corporation, 914 F.2d 259 (6th Cir. 1990) (unpublished, see Sixth Circuit Rule 24).
 
 
 30
 The Rules and Regulations for the Management of the Retirement System Section 3, paragraph 7 provides as follows:
 
 
 31
 The Board shall have sole and exclusive responsibility for determining under these Rules and Regulations what benefits are payable by the Retirement System and to whom they shall be paid; and the Board's interpretation and application of the Rules and Regulations in these and all other matters pertaining to the System's operations and its determination of the facts in making any such application shall be final and conclusive as to all parties.
 
 
 32
 This provision is expressly incorporated by reference in Article 8.3(a) of the Savings Plan Terms and Conditions. Thus, in the instant case, the TVARS Board had discretionary authority to determine eligibility for benefits under the Savings Plan.
 
 
 33
 The Court sees no reason why the Board's decision should be subjected to a stricter standard of review in this case than it would be in a case involving pension benefits. For the foregoing reasons, even if the TVARS Board is not an administrative agency governed by the Administrative Procedure Act, its decision in this case was nevertheless reviewable only under the deferential arbitrary and capricious standard.
 
 III.
 
 34
 The Court next will examine whether summary judgment was proper under the applicable standard. Article 5.2 of the Savings Plan provides as follows:
 
 
 35
 A participant electing such a deferment may designate a beneficiary or beneficiaries to receive such equity [in the Savings Plan] in the case of the participant's death; provided, however, if no beneficiary has been designated, such equity shall be paid to the participant's estate.
 
 
 36
 The TVARS Board specifically relied on this provision. The TVARS Board found no clear evidence that Mr. Gray attempted to designate a beneficiary to receive the Savings Plan equity in the event he died after his retirement. This finding is clearly rational inasmuch as Mr. Gray did not actually make a designation. Although in 1987 Mr. Gray did designate Ms. McKinney as beneficiary to receive the Savings Plan equity in the event he died before retirement, this previous designation did not purport to name a beneficiary in the event Mr. Gray died after retirement. Shortly before his retirement in January, 1988, Mr. Gray designated Ms. McKinney as beneficiary to receive pension benefits, but did not designate any beneficiary to receive the Savings Plan equity. By operation of Article 5.2 of the Savings Plan, the equity was properly payable to Mr. Gray's estate. Arguably, if Mr. Gray had wanted to designate Ms. McKinney to receive the Savings Plan equity in the event he died after retirement, he could have made his intention clear by taking some overt action, such as using the space in which he wrote "hold for max time" to designate a beneficiary or by writing a letter to TVARS indicating such a designation.
 
 
 37
 In light of the foregoing, the district court properly concluded that as a matter of law there was a rational basis for the TVARS Board's decision, and that the decision was not arbitrary or capricious. Summary judgment was therefore properly granted, and the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable James L. Graham, United States District Court for the Southern District of Ohio, sitting by designation