Thomas A. CHAPMAN, Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY
RETIREMENT SYSTEM,
Defendant.

No. 2:95–CV–177.

United States District Court,
E.D. Tennessee.

April 29, 1996.

Arthur M. Fowler, McKinnon, Fowler, Fox & Taylor, Johnson City, TN, for plaintiff.

A. Jackson Woodall, Thomas F. Fine, Edward S. Christenbury, General Counsel, Philip J. Pfeifer, Tennessee Valley Authority, Office of General Counsel, Knoxville, TN, for defendant.

### MEMORANDUM

COLLIER, District Judge.

Before the Court is the Motion for Summary Judgment filed by Defendant Tennessee Valley Authority Retirement System ("TVARS") (Court File No. 11). Plaintiff Thomas A. Chapman ("Chapman") filed a Response (Court File No. 14), to which TVARS replied (Court File No. 17). Chapman then submitted an additional affidavit (Court File No. 19), to which TVARS replied (Court File No. 20). The parties seek review of TVARS' decision denying Chapman's request to convert his initial retirement to disability retirement. For the following reasons, the Court will **GRANT** the motion for summary judgment.

### I. RELEVANT FACTS

Chapman is a former employee of the Tennessee Valley Authority ("TVA") and was a member of TVARS. TVA decided to termi-

nate his employment on 5 March 1993, a decision Chapman appealed to the Merit Systems Protection Board ("MSPB"). On 30 April 1993, Chapman filled out an application for immediate retirement benefits on a form entitled "Application for TVA Retirement Immediate Retirement Benefits Under Section 6 of the System's Rules and Regulations" (Court File No. 34, p. 2 ¶ 4).[1] On 18 May 1993, TVA and Chapman settled the claims that were before the MSPB. The settlement agreement included a provision retroactively setting Chapman's retirement date as 1 February 1993 and establishing 18 May 1993 as the beginning of his retirement benefits (*Id.* at p. 2 ¶ 2).[2] TVARS then processed Chapman's application for immediate retirement benefits and made this benefit effective as of 2 February 1993 (*See id.* at p. 3 ¶ 5). To date, TVARS has paid these benefits at $66.24 per month (*Id.*).

Section 6 of the System's Rules and Regulations provides for three types of retirement benefits—6A. service, 6B. special service, and 6C. disability—with 6B and 6C allowing for immediate retirement benefits (Court File No. 14, pp. 3–4). To receive 6C disability benefits, a qualified person must comply with the following:

> Any member with 5 or more years of creditable service may, upon the application of TVA or upon his own application, filed with the board while the member is in service or not later than 60 days after he ceases to be in service, be retired by the board on a disability retirement allowance upon a determination by the board which

shall include the consideration of a report either by the Medical Board or by the Director of the TVA Division of Medical Services and information from the TVA Employment Branch that the member cannot be continued in his present position because of a physical or mental disability that is likely to be permanent and that there is no other position available for which he is qualified and can perform with the member's medical restrictions. Such retirement shall begin as of the day following the date on which the application is filed, except that the board may in its discretion and for good cause establish an earlier beginning date, but in no case will the beginning date be earlier than the day following the date the member ceases to be in pay status.

Court File No. 12, p. 3; *see also* Court File No. 34, p. 4 ¶ 9. The parties agree that Chapman never submitted the appropriate forms for receiving 6C disability benefits and that such forms were available at the same location where Chapman first received the 6B special service benefits application (Court File No. 34, p. 5 ¶ 14).

On 31 January 1995, Chapman requested TVARS to convert his retirement benefits to disability benefits.[3] Randy A. Snyder ("Snyder"), Executive Secretary of TVARS, responded by letter on 14 February 1995. In pertinent part, Snyder wrote:

> Under the Rules and Regulations of the TVA Retirement System (Rules), a member must file a disability retirement allowance application no later than 60 days after

---

**1.** Immediately under the application's title/heading is the following directive:

> "Refer to Instruction Booklet Before completing this form
> ALL ELECTIONS ARE FINAL (NOT REVOCABLE)"

Just above the application's signature line is the following statement: "I have read the instruction booklet and tax information for completing these forms and fully understand the elections I have made. I further understand the elections are final (not revocable)." Chapman signed the application.

The referenced instruction booklet contains the following admonition: "[w]hen completing the application, you should have a copy of '*When You are Ready to Retire*' ... available for reference." '*When You are Ready to Retire*' shows

Chapman's retirement benefit calculated at thirty percent (30%) of his high three-year average pay.

*See* Court File No. 34, p. 3 ¶ 6; Court File No. 14, Chapman Aff. Ex. E.

**2.** Court File No. 34 is the joint final pre-trial order submitted by the parties. The order includes, *inter alia*, stipulated facts from which the Court largely draws this relevant facts section.

**3.** Chapman contends he only became aware in the Fall of 1994 that he "was not receiving the benefits to which he was entitled under the Defendant's Rules and Regulations for disability benefits" (Court File No. 14, p. 5). He says "to argue that he elected to receive ... ($66.24) per month as opposed to ... ($600.00) per month is ludicrous" (*Id.* at p. 15).

leaving TVA employment. The member is also required to provide medical documentation that their (*sic.*) disability existed at termination. There are no provisions in the Rules that would permit Mr. Chapman's current retirement benefit to be converted to a disability retirement allowance. (Court File No. 13, Snyder Aff. Ex. 5). However, Snyder indicated the Retirement System Board ("Board") would consider Chapman's request at its next meeting scheduled for 3 March 1995 (*Id.*). On 27 February 1995, Chapman sent TVARS a handwritten letter dated 10 March 1993 that Chapman alleges he mailed to TVARS but which TVARS claims to have no record of receiving (Court File No. 34, pp. 5–6 ¶¶ 13–15, 17; Court File No. 12, p. 4).[4] Despite claiming not to have received the 10 March 1993 handwritten letter, at the 3 March 1995 meeting the Board included it and a letter and other materials personally sent by Chapman on 27 February 1995 with the 31 January 1995 letter requesting the conversion to disability retirement (Court File No. 34, pp. 5–6 ¶¶ 15–17).[5]

The Board reviewed the materials before it and denied Chapman's request to convert his retirement to disability retirement. The Board found "that Mr. Chapman had not applied for a disability retirement benefit within 60 days of his termination as provided for in the Rules [and Regulations], ... that an immediate special service retirement benefit had been properly applied for and granted in 1993," that "no evidence submitted ... indicat[ed] that an administrative error occurred," and that the Rules [and Regulations] did not provide the means for Chapman to either convert his retirement or apply at that time for disability retirement (Court File No. 34, p. 6 ¶ 18; *see also* Court File No. 13, Snyder Aff. Ex. 7). TVARS argues review of this decision is the crux of this case. TVARS contends the decision must be upheld if found rational in light of the provisions of the Rules and Regulations of TVARS, supported by substantial evidence, and not arbitrary and capricious (Court File No. 34, p. 9; Court File No. 12, p. 7).

Chapman first argues TVARS failed to properly disclose the type of retirement benefits he would be receiving. Second, he finds fault with TVARS' position that it never received his 10 March 1993 handwritten letter requesting disability retirement benefits. Third, he contends the Board's 3 March 1995 review of his request amounted to a summary disposition rather than a sufficient investigation. Fourth, and closely related to his third argument, Chapman asserts TVARS "failed to comply with the Administrative Procedures Act ("the Act"), 5 U.S.C. § 551 *et seq.* and had no established proce-

---

4. Chapman submitted the affidavit of Judy D. Franklin ("Franklin") to corroborate the allegation he sent the 10 March 1993 letter to TVARS. Franklin, an employee of the Notary Public who notarized Chapman's letter, testifies she typed the appropriate notary language, witnessed the notarization, went with Chapman to the post office, and saw him hand the letter to a postal employee (Court File No. 14, Franklin Aff.).

5. After not receiving a response to this 10 March 1993 handwritten letter, Chapman also alleges he personally went to the TVARS offices in Knoxville, Tennessee on 29 April 1993 (Court File No. 14, Chapman Aff. ¶ 8). He claims to have spoken with a TVARS employee about his previous handwritten request and what he wanted from TVARS. The employee gave him forms to fill out. Chapman says he completed the forms for immediate retirement benefits, which he "understood to be disability benefits" (*Id.* at ¶ 9; *see also* ¶ 10). Although not directly stated by either party, these apparently are the forms Chapman filed on 30 April 1993.

TVARS argues it only learned of this alleged trip to Knoxville and the conversation with the TVARS employee when Chapman filed his opposition memorandum (*See* Court File No. 17, pp. 2–5). The Board did not have this information before it when it discussed Chapman's request during the 3 March 1993 meeting (*Id.* at p. 3).

TVARS points out that the language of Chapman's affidavit and of his memorandum opposing the summary judgment motion differs regarding Chapman's conversation with the TVARS employee. The affidavit states, "I informed the TVARS' employee that I had previously requested to be placed on disability retirement in writing but had received no information. The TVARS' employee stated that I was *awfully young to be seeking retirement benefits*" (*Id.* at ¶ 9) (emphasis added). The memorandum states, "[t]he employee replied that [Chapman] seemed to be *awfully young for disability retirement*" (Court File No. 14, pp. 2–3) (emphasis added). TVARS offers this discrepancy to show Chapman confused what he asked for and, thus, also to help shed light on why Chapman received the forms he did (Court File No. 17, p. 3 n. 2).

dures for filing claims or for the review of a denial of a claim." Chapman maintains the proper relief should be a *de novo* review of his claim or a judicial mandate that TVARS establish appropriate guidelines for the filing and review of claims. *See* Court File No. 34, pp. 8–9.

## II. STANDARD OF REVIEW

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir.1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow*, 44 F.3d 426, 429 (6th Cir.1995); *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir.1994).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411; *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404–06 (6th Cir.1992) (holding courts do not have the responsibility to *sua sponte* search the record for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435–36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411.

## III. ANALYSIS

Though framed differently by Chapman, the issue before the Court is whether the Board's decision denying Chapman's request to convert his special service benefits to disability benefits satisfies the arbitrary and capricious standard of review. *Beaman v. Retirement System of the Tennessee Valley Authority*, No. 90–5377, 1991 WL 41554 (6th Cir. March 26, 1991) (upholding a TVARS decision designating former member's estate as recipient of savings plan equity) is instructive. *Beaman* specifically addressed the appropriate standard of review given to decisions made by the TVARS Board. 1991 WL 41554, at p. *2. In *Beaman*, the district court determined the Act governed and then applied the standard of review set forth in 5 U.S.C. § 706, which contains the arbitrary, capricious, or abuse of discretion standard. *See id.* The United States Court of Appeals for the Sixth Circuit did not address whether the Act applied, because the court found application of the arbitrary and capricious standard proper whether under the Act or federal common law. *See id.*

The Sixth Circuit rooted its decision upon the governmental nature of TVA and in the

legislative approval given to TVA's rules and regulations: "TVA rules and regulations 'are deemed to have received legislative ratification and, thereby, to have become embedded in the law; and are to be given the same force and effect as the statute [creating TVA] itself.'" *Beaman,* 1991 WL 41554, at p. *3, *quoting Tennessee Valley Authority v. Kinzer,* 142 F.2d 833, 837 (6th Cir.1944); *see also Young v. Tennessee Valley Authority,* 606 F.2d 143, 147 (6th Cir.1979) ("Appropriation by Congress of funds for agency action in the face of a construction placed upon an enabling act by the agency has the effect of ratifying the agency action when the agency action is consistent with the purpose of the legislation."). The court considered and found persuasive cases applying a deferential standard of review to decisions of administrative agencies and "more closely analogous" cases involving the denial of benefits in pension plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq. See id.* at pp. *3–*4.

■ Section 3 of the Rules and Regulations reads as follows:

The [B]oard shall have sole and exclusive responsibility for determining under these Rules and Regulations what benefits are payable by the Retirement System and to whom they shall be paid; and the [B]oard's interpretation and application of the Rules and Regulations in these and all other matters pertaining to the System's operations and its determination of the facts in making any such application shall be final and conclusive as to all parties.

Court File No. 12, p. 6; *Beaman,* 1991 WL 41554, at p. *4. The *Beaman* court understood this provision gave the Board "discretionary authority to determine eligibility for benefits." 1991 WL 41554, at p. *4. Given that the case before the Court also involves eligibility for benefits, the Court finds *Bea-*

*man* controls and thus will apply the deferential arbitrary and capricious standard. To apply this standard, the Court will look for a rational basis for the Board's decision. *Id.*

■ Various courts have defined the arbitrary and capricious standard. A decision is "not arbitrary and capricious if [it is] 'rational in light of the plan's provisions.' *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 984 (6th Cir.1991).... This standard 'is the least demanding form of judicial review of administrative action.... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.' *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir.1989)...." *Perry v. United Food and Com. Dist. Unions,* 64 F.3d 238, 242 (6th Cir.1995) (reviewing ERISA plans) (internal citations omitted).

■ TVARS offers a reasoned explanation in light of its Rules and Regulations. First, Chapman filed a valid, timely application for special service benefits.[6] Second, Chapman did not submit a request for disability benefits while he was a member of TVARS or within sixty (60) days after he left TVA employment. Third, the request for disability benefits he did make did not comply with TVARS' filing requirements: it was not on the appropriate forms and did not contain the necessary medical information. Fourth, the Rules and Regulations do not provide for a conversion of benefits as requested by Chapman. Fifth, the Board ultimately did review Chapman's belated request, found he had not satisfied the filing requirements outlined in the Rules and Regulations, and further determined TVARS itself had not made an administrative error.[7]

■ Accordingly, the Court will **GRANT** the motion for summary judgment filed by TVARS. Notwithstanding the Court's rul-

6. *See* Footnote 1.

7. The Court must review the Board's decision considering only the evidence before the Board when it made the decision. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Davidson v. United States Dept. of Energy,* 838 F.2d 850, 855 (6th Cir.), *cert. denied,* 487 U.S. 1207, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988). Thus, while presented to the Court as facts by Chapman, Chapman's trip to Knoxville and his subsequent conversation with a TVARS employee cannot be considered when determining whether the Board's decision was reasoned in light of the Rules and Regulations. TVARS states it only learned of this information *well after* the 3 March 1995 Board meeting. *See* Footnote 5.

ing, Chapman does raise questions about the manner in which TVARS initially distributes information pertaining to the receipt of benefits. As painted by Chapman, the process may at times appear confusing, unclear, and fuzzy. *See generally* Court File No. 19, Walls Aff. Yet that process is not at issue here. The Court understands the burden of selecting among the benefits properly rests with the applicant. Moreover, this case does not present the Court with the opportunity to analyze the inner workings of TVARS' benefits claims procedures,[8] as the correct focus here is the Board's 3 March 1995 decision and the facts before the Board on that date.

An Order will enter.

### ORDER

In accordance with the accompanying Memorandum, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant Tennessee Valley Authority Retirement System (Court File No. 11). There being no other issues before the Court, this case is **DISMISSED.**

**SO ORDERED.**

---

**8.** Chapman's suggestion that TVARS violated certain ERISA provisions because of an alleged lack of procedure for the review of denied claims is misguided. TVARS is not subject to Title 1 of ERISA. *See In re Messing,* 114 B.R. 541, 544 (Bankr.E.D.Tenn.1990); *In re Bowman,* 109 B.R. 789, 790 (Bankr.E.D.Tenn.1990). TVARS is a governmental entity with its own Rules and Regulations and system of organization. *See Kinzer,* 142 F.2d at 834.