## TENNESSEE VALLEY AUTHORITY et al.
### v. KINZER.

No. 9589.

Circuit Court of Appeals, Sixth Circuit.

May 29, 1944.

■■■■■■■■■■■■■■■■

Charles J. McCarthy, of Knoxville, Tenn. (William C. Fitts, Jr., Charles J. McCarthy, and Robert H. Marquis, all of Knoxville, Tenn., on the brief), for appellants.

R. R. Kramer, of Knoxville, Tenn. (Erma G. Greenwood, Mary Kupfer Daniels, Charles E. Rader, R. R. Kramer, and Poore, Kramer & Overton, all of Knoxville, Tenn., on the brief), for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

In bankruptcy proceedings, the referee held that a sum, standing to the credit of the bankrupt, an employee of the Tennessee Valley Authority, in its Retirement System, passed to his estate in bankruptcy. It was further held that vacation pay, accruing to the bankrupt subsequent to his adjudication, did not pass to his estate. On review, the district court held that both of the foregoing items were assets of the bankrupt estate. On appeal, it is contended by the Tennessee Valley Authority that neither item passed to the estate.

The Retirement System was set up in accordance with Rules and ·Regulations, promulgated under the Tennessee Valley Authority Act, 16 U.S.C.A. § 831 et seq. Its purpose is to protect employees—and their families—against loss caused by disability or death; to pay such employees a retirement allowance on termination of their employment, through no fault of their own, after ten years of service; and to pay·annuities and pensions on retirement at the age of 60, or over. Both the Authority and the employees contributed to a fund for the purpose above mentioned.

In this case, the employee, on July 15, 1941, notified the Authority of his intention to resign, effective as of August 28th. Between these dates, he was on annual leave of absence, with pay. On August 7th, he was adjudicated bankrupt. It is the contributions of the bankrupt to the Retirement System, and the pay due him for annual leave, that are here in controversy.

On the part of the trustee in bankruptcy, it is urged that the Tennessee Valley Authority was not obligated to make any contributions to the fund, and, therefore, there was no consideration passing to the bankrupt employee, for his contributions (made by deductions from his salary) to the fund; that the employee's contributions to such fund, under the laws of Tennessee, were in the nature of a spendthrift trust and were available to creditors; and that the annual-leave pay had been earned by the bankrupt prior to his adjudication, and passed to his trustee as money due him upon conditions already complied with.

It is contended by the Authority that the contributions, made by the employee, to the Retirement System, had no cash surrender value at the time of his adjudication; that he had no right to withdraw them at that time; that any transfers, assignments, and encumbrances thereof, were invalid; and that such contributions did not pass to his estate in bankruptcy. Further, the Authority claims that the amounts due the bankrupt by virtue of his leave-with-pay privilege, accrued after the date of his adjudication in bankruptcy; .that there was no obligation to pay him any such compensation until the period of his leave of absence had elapsed; and that they do not constitute assets of his estate.

We discuss, first, the question of the contributions made by the employees to the Retirement System.

The System was set up under Rules and Regulations promulgated under § 3 of the Tennessee Valley Authority Act, 16 U.S. C.A. § 831b.

Section 3 provides that the board of directors of the Authority shall, among other things, appoint the members, officers, and employees necessary for the transaction of its business, fix their compensation, define their duties, "and provide a system of organization to fix responsibility and promote efficiency."

The Rules and Regulations provide for the payment of benefits in accordance with the purpose above mentioned. Under the System, insofar as here pertinent, when once an employee becomes a member, he cannot resign such membership, except upon termination of his employment. Contributions are made to the System by the Authority, through funds regularly appropriated for that purpose by Congress, and by the members, through deductions from their salaries. General administration is vested in a board of seven directors. The funds are handled by a corporate trustee, authorized to do business under the laws of

New York, and selected by the board of directors of the Tennessee Valley Authority. The contributions are paid by the Authority directly to the trustee, for investment, except that current contributions may be paid to the directors of the System for use in meeting currently accruing benefits and administrative expenses.

Under the Rules and Regulations, no transfer, assignment, pledge, seizure, or other voluntary or involuntary alienation or encumbrance of any pension, annuity, or other benefit provided, is permitted or recognized. In the event of any such attempted alienation or encumbrance, including any attempted attachment, levy, execution, garnishment or other legal process, the board may, in its discretion, declare the benefits to be temporarily or permanently forfeited by the beneficiary, and, in lieu of paying them to him, may pay them to any of his dependents or relations by blood, marriage, or adoption; or, in its discretion, may cause them to revert to the general funds of the System, to be used for the benefit of the other members and beneficiaries.

In addition to death, disability, and old-age retirement benefits, an employee, upon termination of employment, before the completion of ten years of service (as in the case here), is entitled to receive a lump sum equal to his accumulated contributions to the System, plus a portion of interest, earned and credited thereon.

It is claimed by the Authority that, although the employee gave notice of termination of his employment on July 15, 1941, it was not to be effective until August 28th; that the benefits which thereon became payable to him under the Retirement System, were not due until the termination of employment, subsequent to the employee's adjudication in bankruptcy on August 7th; and that these moneys did not pass to his bankrupt estate.

Appellee contends that the fund was, in effect, a spendthrift trust created by the debtor; that, under the laws of Tennessee, a trust fund is available to creditors in satisfaction of their judgments, except when the trust has been created by, or the property so held has proceeded from, some person other than the debtor, himself, and the trust is declared by deed duly registered (§ 10353, Williams Tennessee Code); and that such trust funds can be subjected to the satisfaction of the debt, whether such property could, if in the debtor's possession, or title vested in him, be levied upon by execution or not (§ 10354, Williams Tennessee Code). It is claimed, therefore, that the funds, being available to satisfaction of the claims of bankrupt's creditors, passed to his estate in bankruptcy.

The principal issue in the case is whether the Rules and Regulations, above mentioned, are a proper exercise of the regulatory powers of the Authority, under the mandatory provisions of § 3 of the Act, and whether such Rules and Regulations, setting up the Retirement System, have the force and effect that attaches to the provisions of the Act, itself, and here control on the right to the funds in question. Reduced to their more definite application to the controversy before us, the issues are: whether § 3 required regulations; whether the Rules and Regulations, here in question, are reasonably adapted to the administration of the Act; and whether such Regulations have received the legislative ratification that gives them the effect of law. If these propositions are answered affirmatively, the appellant must prevail.

At the outset, it is apparent that the statutory provision in question is in such general terms as to render an interpretative regulation appropriate. Whether the Rules and Regulations are reasonably adapted to the administration of the Act, brings us to the consideration of whether the Retirement System is to be deemed a provision for "a system of organization to fix responsibility and promote efficiency," and a fulfillment of the mandatory requirement of the Act in a sense contemplated by Congress. In this regard, the case of In re Baxter, 6 Cir., 104 F.2d 318, is pertinent. There, this court had before it, for consideration, a system under which an employee made contributions, together with his employer, to a plan which provided for: payment of annuities to the employee after his retirement at a certain age; payment, on the death of the employee before the retirement age, to his named beneficiaries, of the sums contributed to the system by him, with interest compounded annually; and, in the event of discontinuance of employment, the return to the employee of the sums contributed by him to the system, with interest compounded annually. After discussing these provisions, the court said that the plan "tended to promote a more intimate relationship between the employer

and employee, encourage thrift, attract the better type of employe and reduce employment turnover," and that the fund in question was a "valid and subsisting trust for the benefit not only of the bankrupt but also of his employer." 104 F.2d at pages 320, 321.

While the Baxter case did not involve regulations of a governmental agency, and there were no state statutory provisions, there in question (as there are here), specifying the nature of trust funds available to creditors, nevertheless, because of the similarity of the plan in that case to the one before us, what the court had to say about the nature, tendency, and beneficial character of the plan in the Baxter case, can be said with equal force and application of the Retirement System of the Authority—it tended to attract a better class, of employees, to promote a more intimate relationship between employer and employee, gave a sense of security, encouraged thrift and loyalty, identified the employer's interest with that of the employee, tended to continuance of employment, with resultant reduced employment turnovers, and avoided the necessity of retention in service, by humane and considerate employers, of superannuated employees whose efficiency and usefulness had diminished with the coming of old age.

Such a plan as the Retirement System of the Authority, obviously, promoted efficiency. That the nature of the plan and the character of its provisions were within the contemplation of Congress, in enacting § 3 of the Act, may be inferred from the circumstances that, for purposes like those required by this statute, similar systems are in operation in innumerable business corporations, as well as in many other governmental agencies, and in governmental employment, generally. A common example in private business is seen in the plan under consideration in the Baxter case, where employer and employee contributed and cooperated in establishing a system for pensions on retirement of employees, as well as for death benefits. As instances in the federal government, the Civil Service Retirement Act provides for retirement and disability payments to Civil Service employees of the federal government, as well as other groups of employees subject to the Act. 5 U.S.C.A. § 691 et seq. To like effect, are the provisions of the Railroad Retirement Act of 1937, for the benefit of railroad employees. 45 U.S.C.A. § 228a et seq.

That such a retirement plan advances a great social objective in providing for the economic security of employees, does not exclude the objective of promoting efficiency in the employment relationship. Were these plans novel and untried, it might be argued that, while such a retirement system, as here involved, may be directed to a socially beneficial purpose, it does not, thereby, also embrace an objective to promote efficiency. But, what, today, is considered socially beneficial, as well as what is held efficient in business methods, differs greatly from conceptions of the past.

In various congressional enactments, there is evidenced the intention that employees of such a corporation as the Tennessee Valley Authority are to be considered employees of the Government, and entitled to participate in Government benefits and retirement systems. In the Tennessee Valley Authority Act, itself, its employees are specifically exempted, in their appointment by the Authority, from "the provisions of Civil Service laws applicable to officers and employees of the United States." Further, such employees are brought within the beneficial provisions of the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq., in which employees of the federal government are paid compensation for injuries sustained in the performance of their duties. Title 16 U.S.C.A. § 831b. In 1942, subsequent to this litigation, Congress provided that the Civil Service Retirement Act should apply to all officers and employees in or under the executive branch of the United States government, except elective officers and heads of executive departments, provided that such employees were not "subject to another retirement system for such * * * employees" of the Government. Title 5 U.S.C.A. § 693. Congress regards the employees of the Authority as being, substantially, employed by the United States. Posey v. Tennessee Valley Authority, 5 Cir., 93 F.2d 726.

In providing that the appointment of employees by the Tennessee Valley Authority is not required to be made—as in the case of other Government employees—subject to the provisions of the Civil Service law, Congress evidently considered that, while the employees of the Authority were sub-

stantially employees of the Government, nevertheless, because of factors peculiar to the work of such employees, Civil Service requirements should be relaxed as to them. With regard to compensation for disability or death resulting from their work, such employees were emphatically placed in the category of Government employees. Moreover, subsequent amendments of the Act, specifically brought all such employees within the provisions of the Civil Service Retirement Act, except where they were already subject to a retirement system for Government employees. In this legislation, it is clear that Congress recognized such a retirement system as that of the Tennessee Valley Authority to be the equivalent of the Civil Service Retirement System. It would never have excluded such employees from the benefits of the Civil Service Retirement System, unless it considered retirement systems like that of the Authority, to be valid and authorized substitutes. For the intention is pointedly disclosed to bring all employees in the executive department, or in a governmental establishment in the executive department (although not a part of the executive department), or in any agency or corporation in the executive department, within the protection of a Government retirement system, obviously because Congress considered that all such employees were substantially employees of the Government and that they all were, accordingly, entitled to the Government retirement system benefits. Relative to the classification in which the Authority's employees are to be considered, they may be treated, for all beneficent purposes, as if they are employees of the executive branch. The Tennessee Valley Authority exercises an executive or administrative function in its activities, which, prior to its establishment, rested with the divisions of the executive branch of the Government. Morgan v. Tennessee Valley Authority, 6 Cir., 115 F.2d 990. Its great functions are governmental in nature, and might have been performed directly by officers of the Government. It is plainly a governmental agency or instrumentality of the United States. Posey v. Tennessee Valley Authority, supra. See Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543.

We are of the opinion that the recognition, in a subsequent statute, of the Retirement System of the Authority, for its employees, as the equivalent of the Civil Service Retirement System for the other Government employees, is a legislative declaration—or a clear implication—of the meaning of § 3 of the Tennessee Valley Authority Act—that the authority to appoint employees and provide a system for efficiency, contemplates the inclusion therein of a provision for a retirement system; and that such implication should govern the construction of § 3 of the Tennessee Valley Authority Act. See United States v. Freeman, 44 U.S. 556, 3 How. 556, 11 L.Ed. 724.

Moreover, Congress, by regularly appropriating funds to enable the Authority to make its contributions to the System, has demonstrated its intention that the statutory mandate is to be construed and understood in accordance with the settled construction placed upon it by the Authority, as disclosed by the Rules and Regulations setting up the Retirement System. The voting of such appropriations, in the face of the construction placed upon the Act by the Authority, has an effect similar to that resulting from the re-enactment of a statute, the provisions of which had, theretofore, been interpreted by regulations; they are deemed to have received legislative ratification and, thereby, to have become embedded in the law; and are to be given the same force and effect as the statute, itself.

■ In view of certain contentions of appellant, it is to be said that the Tennessee Valley Authority, as a governmental instrumentality, is free from a state's regulation or control and subject to suit only as permitted by the federal statute creating it. Posey v. Tennessee Valley Authority, supra; City of Middlesboro v. Kentucky Utilities Co., 284 Ky. 833, 146 S.W.2d 48; Breeding v. Tennessee Valley Authority, 243 Ala. 240, 9 So.2d 6. While it is argued that there was no consideration for contributions to the System by the employees, for the reason that the Authority could discontinue making its contribution to the fund, or Congress might fail to appropriate money therefor, this objection is without merit. A like contention could be made with regard to the Civil Service Retirement Act, and would similarly be without avail.

Having in mind the command of Congress that the board of directors of the Authority appoint the officers and employees

necessary for the transaction of its business and provide a system of organization to promote efficiency, we are satisfied that the Rules and Regulations, providing for the establishment of such a usual and necessary organization as the Retirement System, were envisaged and authorized by the Act.

■ At the time of bankruptcy, the employee in this case had no interest in his contributions, which he could enforce or transfer, or which his creditors could reach. This is the criterion for determining whether such contributions passed to his trustee in bankruptcy. In re Baxter, supra. The contributions did not pass to the bankrupt estate.

With regard to the vacation pay, this was not due the bankrupt at the time of adjudication. In order to receive it, he would have to remain in the employ of the Authority—although he would be on vacation. The pay accrued during such period. Leave with pay is provided by statute; it applies to employees of corporations created under authority of an act of Congress, and is administered under regulations prescribed by the President. Title 5 U.S.C.A. §§ 30, 30b–30k. Leave of absence with pay is synonymous with a work or duty status; there is no pay for annual leave unless the leave is actually taken. Annual leave is earned for all days an employee is in a pay status, regardless of whether he be on actual duty or on leave of absence with pay, and he accrues annual leave while on "terminal leave"—that is, on annual leave taken immediately prior to final separation from the service; leave may not be extended beyond the final termination of service, or duty status, of an employee; nor is any payment for annual leave authorized, after the employee's separation from service, for leave accrued, but not taken, prior to such separation. 17 Comp.Gen. 377, 641, 643 (1938); 21 Comp.Gen. 596, 597 (1941). There were numerous contingencies, upon the happening of which, the employee would not receive his pay during leave of absence, including employment with other federal agencies during the period of his leave, misconduct, or indulgence in political activity; and there were other conditions which might modify the amount of pay during leave of absence, or give the employee the option to receive it or to have it remain to his credit on the Authority's records during military service.

■ The vacation pay was not due the bankrupt, or earned by him, prior to bankruptcy. He had only earned the right to such pay, at a subsequent period, provided that he continued in the employ of the Authority, in a duty status, during the time the pay accrued; he could not have received it unless he took the leave; he would not have been entitled to it, after his separation from service, whether he had otherwise earned the right to it or not; and, in any case, it was dependent upon the various contingencies. We are of the opinion, therefore, that the employee's right to vacation pay, accruing after adjudication in bankruptcy, was not, under the provisions of the Bankruptcy Act, an asset of his estate and did not pass to the trustee.

The judgment of the district court is, accordingly, reversed and the case remanded for further proceedings, consonant with this opinion.